UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| ISAAC S. KNOTT, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) Case No. 4:21-CV-33-CLC-SKL |
| v. | ) |
| | ) *Lead Case Consolidated with* |
| KEVIN MARTIN, SHANE GEORGE, | ) |
| JOHN LASATER, *and* S.A. | ) Case No. 4:21-CV-40-CLC-SKL |
| DAUGHERTY, | ) |
| | ) |
| *Defendants*. | ) |

# M E M O R A N D U M

This is a *pro se* complaint alleging violations of 42 U.S.C. § 1983 arising out of a traffic stop on July 22, 2020 [Doc. 2]. Specifically, Plaintiff claims Defendants Kevin Martin, Shane George, John Lasater, and S.A. Daugherty violated his Fourth Amendment rights; Defendant George subjected him to excessive force; and Defendant Martin sexually assaulted him during a strip search at the jail [Docs. 4, 12].

Now before the Court is Defendants' motion for summary judgment [Doc. 23] in which Defendants submit affidavits [Docs. 23-3, 23-4, 23-5, 23-6], an audio recording [*see* Doc. 26] and other exhibits [Docs. 23-1, 23-2, 23-7, 23-8, 30], a memorandum [Doc. 24], and a statement of material facts [Doc. 25]. Plaintiff did not timely respond to this dispositive motion, so he waived any opposition to it. E.D. Tenn. L.R. 7.1 and 7.2; *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd mem.* 577 F.2d 740 (6th Cir. 1978). Upon considering the parties' pleadings, the competent summary-judgment evidence, and the applicable law, the Court finds that the motion for summary judgment [Doc. 23] should be **GRANTED** and this action should be **DISMISSED WITH PREJUDICE**.

I.     BACKGROUND

The following facts are undisputed by the parties unless otherwise noted. At the time of the relevant events, Defendants were all members of the Bedford County Drug Task Force [Doc. 2 at 8].

On the afternoon of July 22, 2020, Defendant Martin saw Plaintiff exit the residence of a known drug dealer and drive away [Doc. 23-3 ¶ 5]. Defendant Martin was familiar with Plaintiff and knew that his driver's license was suspended [*Id.* ¶¶ 4–5]. Defendant Martin drove behind Plaintiff and turned on his blue lights to initiate a stop for driving on a suspended license, which is a Class B misdemeanor [*Id.* ¶¶ 6–7]. Plaintiff stopped on Ledbetter Street [Doc. 23-2 at 9–10].

When Defendant Martin approached Plaintiff's vehicle, he noticed a strong smell of marijuana emanating from the vehicle [Doc. 23-3 ¶ 8]. Defendant Martin questioned Plaintiff about the smell, and Plaintiff admitted that he had been smoking marijuana when Defendant Martin initiated the stop [*Id.* ¶ 9; Doc. 23-2 at 11–12]. Defendant Martin checked Plaintiff's license and registration and confirmed that Plaintiff's license was suspended [Doc. 23-3 ¶ 10; *see also* Doc. 23-1]. Then, Defendant Martin had Plaintiff and his female passenger step out of the vehicle [Doc. 23-3 ¶ 10; Doc. 23-2 at 15]. Defendant Martin escorted Plaintiff to the back of the vehicle and performed a pat-down search to check for weapons [Doc. 23-3 ¶¶ 12–13].

Within ten minutes of Plaintiff being pulled over, Defendant Lasater arrived at the scene [*Id.* ¶ 14]. Defendant Lasater stayed with Plaintiff while Defendant Martin began searching Plaintiff's vehicle [*Id.* ¶ 15]. Defendant Daugherty arrived shortly thereafter and stayed with Plaintiff while Defendant Lasater helped Defendant Martin search the vehicle [*Id.* ¶¶ 14–15]. Plaintiff did not consent to the search and Defendants did not have a warrant [Doc. 2 at 9]. Defendants searched the vehicle for approximately an hour and a half [*Id.*].

Then Defendants Martin, Lasater, and Daugherty moved Plaintiff and his vehicle fifty yards to a parking lot across the street [Doc. 23-2 at 13]. According to Defendants Martin, Lasater, and Daugherty, they changed locations because there was traffic on Ledbetter Street and the parking lot was a safer location to continue the search [Doc. 23-3 ¶ 16; Doc. 23-4 ¶ 4; Doc. 23-5 ¶ 4]. Plaintiff alleges he was moved so that witnesses would not see him being assaulted [Doc. 23-2 at 16].

At some point, Plaintiff was detained in Defendant Martin's cruiser. Plaintiff alleges he was placed in the back seat of the cruiser in "high 80's to 90 degree weather" [Doc. 2 at 9]. He seems to say that this occurred after his vehicle was searched for an hour and a half, but before he was moved to the parking lot [*Id.*]. Plaintiff further states that after he was placed in the hot cruiser, "[he] began to complain of heat exhaustion and needed water, because of the heat" and his diabetes [*Id.*]. However, in Plaintiff's deposition, he does not mention being placed in a hot cruiser [*See* Doc. 23-2]. Rather, he states that *after* he arrived at the parking lot, he told the officers, "Hey, I'm hot. I need some water. My diabetes is messing up" [*Id.* at 16]. And in response, Defendant Martin had Plaintiff sit in the front of his cruiser with the air conditioning on [*Id.* at 16–17].

After Plaintiff was moved to the parking lot, Defendant George arrived on scene [Doc. 23-6 ¶ 3; Doc. 2 at 9]. Defendant George was briefed by the other defendants and personally smelled the odor of marijuana emanating from Plaintiff's vehicle [Doc. 23-6 ¶¶ 4–5]. Defendant George read Plaintiff his *Miranda* rights and interviewed him about drug activity [*Id.* ¶ 6]. Plaintiff denied any knowledge of such activity [Doc. 2 at 9].

Having found no illegal drugs in Plaintiff's vehicle apart from marijuana residue, Defendant Martin arrested Plaintiff for the sole charge of driving on a suspended license [Doc. 23-3 ¶¶ 17, 24]. Before Defendant Martin transported Plaintiff to the Bedford County Jail, Defendant

3

George searched Plaintiff's person [Doc. 23-6 ¶ 7]. It is undisputed that during the search, Defendant George used his feet to spread Plaintiff's legs apart and pulled up Plaintiff's low-slung pants [Doc. 23-6 ¶¶ 9–10].

However, the parties disagree about the amount of force used by Defendant George. According to Plaintiff, Defendant George "pulled [him] out of [Defendant Martin's] vehicle" and "began to get aggressive violently kicking the Plaintiff's legs apart . . . after which the Plaintiff suffered injury to his testic[les] by being violently struck by [Defendant George's] violent frisk" [Doc. 2 at 9]. Defendant George denies pulling Plaintiff out of any vehicle, violently kicking him, or otherwise conducting a violent search [Doc. 23-6 ¶¶ 8, 11]. He further attests that Plaintiff did not express any pain or discomfort during the search [*Id.* ¶ 12]. Defendant Martin, who was next to Defendant George at that time, corroborates Defendant George's account [Doc. 23-3 ¶ 19]. Defendant Martin also states that Plaintiff did not express any pain or discomfort during his transport to the jail and did not appear to be in any distress during that time [*Id.* ¶ 21].

Defendants submit an audio recording of the interview, search, and transport [Audio Recording of Interview and Search].[1] The Court has reviewed the recording and summarizes its contents as follows. During the first two minutes, Defendant George begins questioning Plaintiff about drug activity [*Id.* at 0:00–2:00]. Then he *Mirandizes* Plaintiff and continues to question him about drugs for approximately six and a half minutes [*Id.* at 2:00–8:35]. During that time, Plaintiff repeatedly denies engaging in any drug activity [*Id.* at 1:41–8:40]. After the interview, Defendant George instructs Plaintiff, "Step out for me, step out for me. Put your hands up here. Spread your legs out. Spread 'em way out." [*Id*. at 8:43–10:00]. The next audible moment on the recording

---

[1] This audio recording, which Defendants refer to as "Exhibit 7," is referenced in Defendants' Notice of Audio Filing [Doc. 26].

is Plaintiff continuing to deny knowledge of drug activity and Defendant George counting money that he has apparently removed from Plaintiff's pocket [*Id.* at 10:15–10:46]. Defendant George warns Plaintiff that he is going to be strip searched at the jail, and Plaintiff mentions that he was previously charged with taking contraband into the jail, with the implication being that he knows not to make the same mistake again [*Id.* at 9:28–9:40]. The remainder of the recording, which lasts approximately twenty minutes, captures Defendant Martin and Plaintiff casually chatting as Defendant Martin transports Plaintiff to the jail [*Id.* at 11:15–31:09]. During the entirety of the recording, Plaintiff does not express any audible pain or discomfort [*See id.*].

Following transport, Plaintiff was booked into the Bedford County Jail on a charge of driving on a suspended license [Docs. 23-7, 23-8]. He told jail staff he was not sick or injured and that there was nothing special that they needed to know concerning his welfare [Doc. 30 at 1]. Plaintiff also advised jail staff that he suffers from diabetes, follows a diabetic diet, and takes multiple medications [*Id.* at 1–2].

As part of the intake process, Plaintiff was subjected to a strip search [Doc. 2 at 10; Doc. 23-8 at 1]. A jail record indicates that the "searching officer" for Plaintiff's intake was Bedford County Sheriff's Deputy Keith Thompson [Doc. 23-7]. Plaintiff asserts that Defendant Martin took him to the room where the strip search occurred, made Plaintiff remove his clothes, and told him to "bend over, lift up, bend over, squat, cough, . . . turn around [and] expose . . . [his] anus to him" [Doc. 23-2 at 18; *see also* Doc. 2 at 10]. In his complaint, Plaintiff further alleges that during the strip search Defendant Martin "sexually assaulted him out of the view of the camera" [Doc. 2 at 10]. However, in his deposition testimony, Plaintiff acknowledged that Defendant Martin did not touch him during the search [Doc. 23-2 at 18].

5

After he posted bail, Plaintiff went to the emergency room, where he was diagnosed with epididymitis[2] and major depressive disorder [Doc. 2 at 10, 12–14]. While at the emergency room, Petitioner also underwent a mental health evaluation and obtained a crisis management plan [*Id.* at 10, 15–16].

Based on these events, Plaintiff filed this *pro se* action, alleging that Defendants violated his constitutional rights. Defendants move for summary judgment on all claims. Although Plaintiff did not respond, the Court will treat his verified complaint as an opposing affidavit. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (recognizing that a "verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment").[3]

## II.  LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable

---

[2] Epididymitis is an inflammation of the coiled tube at the back of the testicle and is most often caused by a bacterial infection, including sexually transmitted infections such as gonorrhea or chlamydia. *Epididymitis Symptoms and Causes*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/epididymitis/symptoms-causes/syc-20363853 (last visited Feb. 13, 2023).

[3] The Court notes that before Defendants moved for summary judgment, Plaintiff submitted a collection of documents and a flash drive that he described as "evidence" in support of this action [*See* Doc. 20]. The documents included Bedford County Juvenile Court orders, a petition for writ of habeas corpus, a notice of property seizure, a forfeiture warrant, an incomplete affidavit in support of forfeiture warrant, and three pages of testimony from an April 13, 2021, hearing transcript [*Id.*]. The flash drive contained a short video clip date stamped February 4, 2020, depicting three officers in a room talking. Defendants objected to Plaintiff's filings on the grounds that they were improper and irrelevant to this case [Doc. 21]. Although the Court does not find it necessary to strike Plaintiff's filings from the record, the Court agrees with Defendants that Plaintiff's proffered evidence is not relevant to the claims before the Court. Therefore, the Court will not consider those filings in its disposition of this summary-judgment motion.

inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted).

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c). If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not presume that the nonmovant could prove the necessary facts. *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)). Moreover, "[c]onclusory allegations of fact and legal conclusions are insufficient to defeat a summary-judgment motion." *White v. Erdos*, No. 22-3350, 2022 U.S. App. LEXIS 33900, at *4 (6th Cir. Dec. 8, 2022) (citing *Sigmon v. Appalachian Coal Props.*, 400 F. App'x 43, 49 (6th Cir. 2010)).

However, a district court cannot grant summary judgment in favor of a movant simply because the adverse party did not respond. *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court must, at a minimum, examine the motion to ensure that the movant has met its burden. *Id*. (quoting *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991). In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992).

Once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*," the ultimate decision becomes a pure question of law. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

7

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 380 (citation omitted). Accordingly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III. ANALYSIS

Plaintiff brings claims under 42 U.S.C. § 1983. To survive a motion for summary judgment in a § 1983 action, a plaintiff must demonstrate a genuine issue of material fact as to two elements: (1) he was deprived of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The plaintiff must put forward evidence suggesting that the particular defendant was personally involved in the alleged constitutional violations. *Abu-Joudeh v. Schneider*, 954 F.3d 842, 850 (6th Cir. 2020) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).

Here, Defendants were clearly acting under color of state law. At issue is whether they violated Plaintiff's constitutional rights.

Plaintiff asserts that Defendants violated his Fourth Amendment rights by stopping him and subjecting him to unreasonable searches and seizures [Doc. 2 at 7, 9]. He also raises a Fourth Amendment claim that Defendant George subjected him to excessive force and a Fourteenth Amendment claim that Defendant Martin sexually assaulted him at the jail[4] [*Id.* at 9–10]. *See Birdwell v. Corso*, No. 3:07-cv-0629, 2010 WL 4723459, at *2 (M.D. Tenn. Nov. 15, 2010) (citing

---

[4] In the screening order [Doc. 4], the Court referenced Plaintiff's sexual assault claim as arising under the Eighth Amendment. However, as Defendants point out, this claim arises under the Fourteenth Amendment.

8

*Doe v. Magoffin Cnty. Fiscal Ct.*, 174 F. A'ppx. 962, 966–67 (6th Cir. 2006)) ("[T]he Fourth Amendment protects citizens from an officer's use of excessive force and improper seizures, and citizens have a clearly established substantive due process right under the Fourteenth Amendment to 'bodily integrity,' which protects citizens against sexual assault at the hands of government officers.").

Defendants contend that summary judgment is warranted because there are no genuine issues of material fact, and they are entitled to judgment as a matter of law [Doc. 23 at 1]. Specifically, they assert that the traffic stop, the searches of Plaintiff's person and vehicle, and his arrest were supported by probable cause [Doc. 24 at 5]. They argue that Plaintiff cannot establish that Defendant George used excessive force or that Defendant Martin sexually assaulted him [*Id.* at 14]. Finally, Defendants contend that they are entitled to qualified immunity on any other claims that Plaintiff may be raising [*Id.* at 16].

The doctrine of qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As discussed below, no reasonable jury could find that Defendants violated Plaintiff's constitutional rights. As such, the Court will not reach the question of qualified immunity.

### A. Searches and Seizures

The Fourth Amendment secures the right to be free from unreasonable search and seizure. U.S. Const. amend. IV. Plaintiff raises multiple Fourth Amendment issues in connection with the traffic stop. The Court will address each allegation in turn.

#### 1. Initial Stop and Removal from Vehicle

First, Plaintiff claims that his constitutional rights were violated when he was "unlawfully stopped" [Doc. 2 at 9].

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). "A police officer may stop a motorist when he possesses probable cause of a civil infraction or has reasonable suspicion of criminal activity." *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (citing *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012)). The constitutional reasonableness of a stop does not depend upon the police officer's motives. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Here, the initial stop was clearly lawful. Defendant Martin was familiar with Plaintiff and knew that his license was suspended. Thus, when Defendant Martin observed Plaintiff driving, he reasonably suspected that Plaintiff was committing the crime of driving with a suspended license. Although Defendant Martin may have had other subjective reasons for making the stop, those motives are legally irrelevant. Because Defendant Martin had reasonable suspicion of criminal activity, he had authority to initiate the stop. *See also United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) ("[A]n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle.") (citing *Whren*, 517 U.S. at 812–13)).

Because the initial stop was lawful, Defendant Martin also had authority to order Plaintiff to exit the vehicle. *United States v. Ware*, 465 F. App'x 487, 494 (6th Cir. 2012) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977)) ("'[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'").

10

### 2. Pat-Down Search

Plaintiff also complains that he was "searched of his persons" [Doc. 2 at 9]. The first search of Plaintiff's person was the pat-down search, or frisk, conducted by Defendant Martin after Plaintiff exited his vehicle. However, no reasonable jury could find that Defendant Martin lacked a legal basis for that search.

An officer may conduct a pat-down of a lawfully detained individual to search for weapons if he has a reasonable suspicion that the individual is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* The Court of Appeals for the Sixth Circuit holds that "where an officer suspects drug activity, he can reasonably infer that the suspect is armed and dangerous." *United States v. Akinyemi,* 101 F. App'x 109, 111 (6th Cir. 2004); *see also United States v. Jacob,* 377 F.3d 573, 579–80 (6th Cir. 2004) ("[O]fficers who stop a person who is 'reasonably suspected of carrying drugs' are 'entitled to rely on their experience and training in concluding that weapons are frequently used in drug transactions,' and to take reasonable measures to protect themselves." (quoting *United States v. Heath*, 259 F.3d 522, 530 (6th Cir. 2001))).

Here, Defendant Martin suspected that Plaintiff was carrying drugs, based on the strong odor of marijuana coming from Plaintiff's vehicle and Plaintiff's admission to smoking marijuana moments before the stop. In addition, Defendant Martin had observed Plaintiff exiting the residence of a known drug dealer shortly before the stop. Given this evidence of drug activity, Defendant Martin could reasonably infer that Plaintiff was armed and dangerous, thereby justifying the pat-down search for weapons. *See United States v. Noble*, 364 F. App'x 961, 965 (6th Cir. 2010) (holding that frisk was justified where officer smelled marijuana emanating from

the vehicle and the driver did not respond when asked if he had a weapon); *see also United States v. Love*, No. 11-20105-STA-cgc, 2012 WL 3887065, at *6 (W.D. Tenn. Sep. 6, 2012) (finding reasonable suspicion justified frisk where officer knew defendant was the subject of a narcotics investigation, smelled a strong odor of marijuana coming from the vehicle, and saw a bag that appeared to contain marijuana on the vehicle's floor).

### 3. Vehicle Search

Plaintiff also complains that his vehicle was searched without a warrant [Doc. 2 at 9]. Warrantless searches are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). One such exception is the "automobile exception," where "police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (first citing *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998); then citing *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)); *see also Carroll v. United States*, 267 U.S. 132, 153 (1925).

Here, the odor of marijuana coming from the vehicle and Plaintiff's admission to smoking marijuana just before the stop supplied Defendants with probable cause to believe that Plaintiff's vehicle contained illegal drugs. The "detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle." *United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008); *see also United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004) (explaining that officers had probable cause for a warrantless search when they smelled marijuana coming from the vehicle). Accordingly, as a matter of law, the warrantless search of Plaintiff's vehicle was reasonable.

#### 4. Move to Parking Lot

Plaintiff asserts that his Fourth Amendment rights were violated when Defendants Martin, Lasater, and Daugherty moved him and his vehicle to a parking lot during the stop [Doc. 2 at 7, 9].

Whether a change of locations violates the Fourth Amendment depends on whether the move was "more intrusive than necessary to fulfill the purpose of the stop." *United States v. Pino*, 855 F.2d 357, 362 (6th Cir. 1988).

Here, no reasonable jury could find that the change of locations was overly intrusive. The parking lot was a mere fifty yards away. It was not a more institutional location, such as a police station or interrogation room. And Defendants' unrefuted testimony is that there was traffic on Ledbetter Street, and the parking lot was a safer location to continue the search. Thus, the record shows that the change of locations was reasonable. *See Carter v. Hamaoui*, 699 F. App'x 519 (6th Cir. 2017) (recognizing that when officers have probable cause to search a vehicle, they have reasonable suspicion to move the vehicle to a safer location to complete the search); *Pino*, 855 F.2d at 363 (finding no Fourth Amendment violation where driver subject to traffic stop was ordered to move his vehicle from the side of the interstate to an interstate underpass for safety reasons).

Plaintiff offers no evidence supporting his claim that the change of locations was unreasonable. Although he alleges that the move was motivated by Defendants' desire to assault him outside the view of spectators, that conclusory allegation lacks factual support. Thus, Defendants Martin, Lasater, and Daugherty are entitled to summary judgment on this claim.

### 5. Placement in Back Seat of Hot Cruiser

Next, Plaintiff suggests that his rights were violated when he was placed in the back of Defendant Martin's cruiser in "high 80's to 90 degrees weather" [Doc. 2 at 9]. He claims that due to the heat, he began to complain of heat exhaustion and thirst and that his diabetes was "messing up" [Doc. 23-2 at 16].

"[U]nnecessary detention in extreme temperatures . . . violates the Fourth Amendment's prohibitions on unreasonable searches and seizures." *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (finding a Fourth Amendment violation where individual was detained for three hours in ninety-degree heat with no ventilation and officers refused to roll down the windows). However, detention for a relatively short period of time in a hot patrol car does not necessarily amount to a constitutional violation. *Wright v. Depew*, No. 2:07-CV-166, 2010 WL 2594398, at *7–8 (E.D. Tenn. June 22, 2010) (finding no Fourth Amendment violation where plaintiff spent thirty-five to forty-five minutes in unventilated cruiser in hot weather and when plaintiff complained, officer cracked the window open).

No reasonable jury could find that Plaintiff was detained in extreme heat unnecessarily. Based on his complaint, it is not clear how much time he spent in the hot cruiser or whether the cruiser was ventilated. Nor does Plaintiff offer concrete evidence that he suffered any injury. Moreover, Plaintiff testified that Defendant Martin responded to his complaints about the heat by having him sit in the front of the cruiser with the air conditioning running. Given the lack of evidence and Defendant Martin's efforts to relieve Plaintiff's discomfort, Defendants are entitled to summary judgment on this claim.

### 6. Arrest and Search Incident to Arrest

Plaintiff suggests that it was unreasonable for Defendants to arrest him for "the lo[ne] charge of driving on suspended license" [Doc. 2 at 9–10]. He also challenges Defendant George's authority to conduct a search of his person following his arrest [*Id.* at 7, 9]. However, these claims fail as a matter of law.

"A police officer may conduct a warrantless arrest of an individual when the officer has probable cause to believe that the individual has committed a felony or misdemeanor in the officer's presence or a felony away from the officer's presence." *United States v. Dickens*, 748 F. App'x 31, 36 (6th Cir. 2018) (citing *United States v. Watson*, 423 U.S. 411, 417–18 (1976)).

Here, Defendant Martin observed Plaintiff driving with a suspended license, which is a misdemeanor. Therefore, even though the offense was a minor one, Defendant Martin was justified in effectuating an arrest. *See Virginia v. Moore*, 553 U.S. 164, 171 (2008) ("[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Because Plaintiff was subject to a lawful arrest, Defendant George was automatically authorized to conduct a search incident to that arrest. *United States v. Moore*, 130 F. App'x 728, 734 (6th Cir. 2005) (citing *United States v. Robinson*, 414 U.S. 218, 234–35 (1973)) ("Under the 'search-incident-to-a-lawful-arrest' exception to the warrant requirement, a law enforcement officer may conduct a full search of an arrestee's person incident to a lawful custodial arrest." (citing *United States v. Robinson*, 414 U.S. 218, 234–35 (1973)).

Accordingly, Defendants Martin and George are entitled to summary judgment on these claims.

### 7. Prolonged Detention

Plaintiff complains that his Fourth Amendment rights were violated because the traffic stop exceeded two hours [Doc. 2 at 7].

A "police stop exceeding the time needed to handle the matter for which the stop was made violates" the Fourth Amendment's prohibition against unreasonable seizures. *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). However, if an officer develops reasonable suspicion of criminal activity during a traffic stop, he may prolong the stop beyond the time needed to address the initial infraction. *United States v. Canada*, 822 F. App'x 481, 482 (6th Cir. 2020).

As discussed above, Defendant Martin smelled the odor of marijuana coming from Plaintiff's vehicle, and Plaintiff admitted to smoking marijuana just before the stop. Accordingly, Defendant Martin and his fellow Defendants could prolong the stop to investigate whether Plaintiff was involved in drug activity or possessed drugs in his vehicle. Plaintiff has offered no evidence that Defendants did not investigate diligently. *See United States v. Sharpe*, 470 U.S. 675, 676 (1985) (observing that in order to determine whether the duration of an investigative detention is reasonable the Court must consider whether the police diligently pursued the investigation). Accordingly, the Defendants are entitled to summary judgment on this claim.

### B. Excessive Force

Plaintiff alleges that Defendant George "pulled [him] out of [Defendant Martin's] vehicle," "began to get aggressive violently kicking the Plaintiff's legs apart," and injured Plaintiff's testicles with his "violent frisk" [Doc. 2 at 9]. Defendant George acknowledges that he used his feet to spread Plaintiff's legs apart and pulled up Plaintiff's low-slung pants in order to perform the search [Doc. 24 at 13]. However, he argues that these actions cannot be characterized as excessive force [*Id.*].

16

In support of his motion for summary judgment, Defendant George submits an affidavit in which he denies pulling Plaintiff out of any vehicle, violently kicking Plaintiff's legs, or conducting a violent frisk [Doc. 23-6]. He also submits an affidavit from Defendant Martin, attesting that he witnessed Defendant George's search of Plaintiff and that it was not conducted in a violent manner [Doc. 23-3 at 3]. Defendant Martin further attests that Plaintiff did not appear to be in pain or discomfort during his transport to the jail [*Id.*].

In addition to affidavits, Defendant George supports his motion with objective evidence. First, he relies on the audio recording of Plaintiff's interview, search incident to arrest, and transport to the jail. He notes that in the recording he can be heard telling Plaintiff, "step out for me, put your hands up here, spread your legs out, put them way out," which he contends corroborates his account that he did not violently pull Plaintiff out of the vehicle [Doc. 24 at 13]. Defendant George also argues that if Plaintiff had been subjected to the violence alleged in his complaint, Plaintiff would have given some indication of pain or discomfort, but the recording does not capture any such indication [*Id.*]. As additional evidence that Plaintiff was not subjected to excessive force, Defendant George points to Plaintiff's inmate medical form, which indicates that Plaintiff advised jail staff that he was neither sick nor injured [*Id.* at 14].

A citizen's claim of excessive force during the course of an arrest or investigatory stop is governed by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. To determine whether force was excessive, a court must "apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of

17

the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citation omitted).

The Court finds that Defendant George has met his burden of showing that there is no genuine issue of material fact in Plaintiff's excessive force claim. As Defendant George points out, he was authorized to use a reasonable amount of force in conducting the search. Indeed, "even an allegedly rough, intrusive, and hostile pat down search of the groin area does not amount to a constitutional violation if it was objectively reasonable for the officer to examine that part of the body for a concealed weapon in connection with a frisk." *Ray v. Stufano*, No. 2:07-42, 2008 WL 11509951, at *5 (M.D. Tenn. Sep. 16, 2008) (citing *Bowie v. City of Livonia*, 2007 WL 2050415, at *4 (6th Cir. July 17, 2007)). Plaintiff has offered no evidence showing that Defendant George's actions were gratuitous or incompatible with a legitimate search incident to arrest.[5] Moreover, Defendant George has offered credible objective evidence contradicting Plaintiff's allegation of excessive force.

Having failed to respond to Defendants' summary -judgment motion, Plaintiff has not set forth specific facts to refute Defendant George's arguments. Plaintiff's conclusory allegations that he was "pulled out" of the vehicle and subjected to a "violent" frisk are insufficient to create a genuine issue for trial. *See Wilson v. Louisville-Jefferson Cty. Metro. Gov't*, No. 3:19-CV-739-CRS, 2021 WL 1700357, at *4 (W.D. Ky. Apr. 29, 2021) (granting summary judgment where plaintiff alleged that officer "aggressively kicked [his] legs apart when he began the pat down," yet failed to provide evidence showing the force used was excessive). Accordingly, after

---

[5] As noted in the Background section of this opinion, Plaintiff submitted medical records with his complaint, showing that he visited the emergency room after bonding out of jail [*See* Doc. 2 at 12–16]. However, those records did not contain any information corroborating his excessive force claim.

reviewing the facts in the light most favorable to Plaintiff, the Court concludes Defendant George is entitled to summary judgment on this claim.

### C. Sexual Assault

A claim of sexual assault by a state officer arises under the Fourteenth Amendment. *Doe v. Magoffin Cnty. Fiscal Ct.*, 174 F. App'x 962, 966–67 (6th Cir. 2006).

Plaintiff makes the conclusory allegation that Defendant Martin "sexually assaulted" him outside of the view of the camera during the strip search at the jail [Doc. 2 at 10]. However, he fails to provide any factual details or evidence in support of this claim. Moreover, in his deposition, Plaintiff concedes that Defendant Martin did not touch him during the search. Thus, Plaintiff's sexual assault allegation cannot survive summary judgment.

The Court notes that to the extent Plaintiff argues that he should not have been subject to a strip search, his claim implicates the Fourth Amendment. However, such a claim is unsupported by the record. And it is well established that "detainees may be subjected to suspicionless strip searches as part of the jail's intake process." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 478 (6th Cir. 2017) (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012)).

Here, Plaintiff has not identified anything about the strip search that rendered it unreasonable. Hence, even assuming that Defendant Martin conducted the strip search—as opposed to Deputy Keith Thompson who was listed as the "searching officer" in the jail records—no reasonable jury could find that the strip search violated Plaintiff's Fourth Amendment rights.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [Doc. 23] will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**.

Further, the Court hereby **CERTIFIES** that any appeal would not be taken in good faith. Should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**